# NO. 12-22-00047-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *YOELVIS HERRERA, APPELLANT* | § | *APPEAL FROM THE 114TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS, APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *OPINION*

Yoelvis Herrera appeals his conviction for unlawful interception of wire or electronic communications. In a single issue, Appellant challenges the sufficiency of the evidence. We affirm.

## BACKGROUND

Appellant was charged by indictment with unlawful interception of wire or electronic communications, enhanced by a prior felony offense.[1] He pleaded "not guilty," and the matter proceeded to a jury trial.

At trial, the evidence showed that on December 4, 2019, Tyler Police Detectives Colin Hale and Lydia Thedford discovered a skimming device inside a gas pump at a local station. They removed the device and replaced it with a cell phone that mimicked the device's Bluetooth signal. The detectives installed a motion-activated Blink camera inside the pump and another video camera on a utility pole. On December 8, they received a notification from the camera, which recorded Appellant opening the pump, pulling out a board, and apparently looking for

---

[1] A second-degree felony, punishable as a first-degree felony after the enhancement by imprisonment for a term of life, or not more than ninety-nine years or less than five years, and a possible fine not to exceed $10,000.00. *See* TEX. PENAL CODE ANN. §§ 16.02(b)(1), (f) (West 2019); 12.32 (West 2019); 12.42(b) (West 2019).

something. Patrol officers were dispatched to the scene and detained Appellant. After an investigation, the detectives obtained a warrant for his arrest.

Ultimately, the jury found Appellant "guilty" as charged. After hearing the punishment evidence, the jury assessed Appellant's punishment at imprisonment for sixty-five years and a $5,000.00 fine. This appeal followed.

## EVIDENTIARY SUFFICIENCY

In Appellant's sole issue, he argues that the evidence is insufficient to support his conviction for unlawful interception of wire or electronic communications because "the meaning of the State's circumstantial evidence is merely speculative."

## Standard of Review and Applicable Law

The ***Jackson v. Virginia***[2] legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. *See **Brooks v. State***, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See **Jackson***, 443 U.S. at 315-16, 99 S. Ct. at 2686-87; *see also **Escobedo v. State***, 6 S.W.3d 1, 6 (Tex. App.—San Antonio 1999, pet. ref'd). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See **Jackson***, 443 U.S. at 320, 99 S. Ct. at 2789; *see also **Johnson v. State***, 871 S. W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most favorable to the verdict. *See **Jackson***, 443 U.S. at 320, 99 S. Ct. at 2789; ***Johnson***, 871 S.W.2d at 186. This requires the reviewing court to defer to the jury's credibility and weight determinations, because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. ***Brooks***, 323 S.W.3d at 899; *see **Jackson***, 443 U.S. at 319, 99 S. Ct. at 2789. A "court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." ***Jackson***, 443 U.S. at 326, 99 S. Ct. at 2793. A successful legal sufficiency challenge

---

[2] 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979).

will result in rendition of an acquittal by the reviewing court. *See Tibbs v. Florida*, 457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-18, 72 L. Ed 2d 642 (1982).

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the state's burden of proof or unnecessarily restrict the state's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Id.* To prove Appellant guilty as charged in the indictment, the State was required to prove that he intentionally intercepted or endeavored to intercept a wire or electronic communication, namely credit card information transmissions, by use of an electronic transmitter attached to a credit card reading device located in a gas pump. *See* TEX. PENAL CODE ANN. § 16.02(b)(1).

**Analysis**

Appellant argues that the evidence supporting his conviction is insufficient because it is merely speculative as to whether he "endeavored to intercept" electronic communications from the gas pump. He contends that the State's theory of culpability was that because he opened the pump door, he was responsible for installing the skimmer. Consequently, Appellant argues that the evidence is merely speculative because his fingerprints and DNA profile were not found on the skimmer or the pump and the circumstantial evidence does not support a reasonable inference that he endeavored to intercept electronic communications. We disagree.

The undisputed evidence shows that Appellant parked his pickup truck at the gas pump where the skimmer was discovered—Pump 8—and opened the pump door. Once inside the pump, he immediately pulled out the CRIND board,[3] to which the skimmer had been attached, looked around for a few seconds, and closed the pump. The fact that the CRIND board can be pulled out of the pump is highly specialized knowledge. A couple minutes later, Appellant walked over to an individual and a truck parked at another pump—Pump 4. A few minutes later, Appellant walked back to his truck, and the other truck left the station. About a minute later, the patrol officers arrived.

---

[3] Detective Hale testified that "CRIND" stands for "card reader in dispenser" and a CRIND board is "essentially the device that connects to eventually the internet that handles the transaction information from the card reader."

The patrol officers requested and obtained Appellant's consent for a search of his person and vehicle. Appellant told the officers that he just bought diesel, but an investigation of the pump records showed that there was no transaction at Pump 8 at that time. He later stated that the pump was open and he looked inside because he was curious. However, Detective Hale testified that on December 6, he adjusted the Blink camera and then bolted the pump door closed. Detective Thedford testified that if the pump door was opened even a small amount prior to Appellant's opening it, the detectives would have been notified. Appellant further stated that someone approached him and asked him to pay for some gas in exchange for $10.00 cash because he had no debit card and the station was closed.

When Detective Thedford arrived, she asked Appellant why he was in Tyler, and he said that he was there to see his girlfriend. However, Appellant could not say on which street his girlfriend lived. Instead, he said that her address was in the GPS in his cell phone. But when Thedford obtained Appellant's consent and looked through his cell phone, the active directions in the GPS app were not to a residence but to another gas station. Thedford additionally found a long list of gas stations around Texas and Louisiana that Appellant visited. To explain this, Appellant said he owned a trucking company.

When Detective Hale arrived and was about to search Appellant's truck, Appellant revoked his consent. After obtaining a search warrant, Hale found a gas pump key, a 10-millimeter socket on a screwdriver handle, a hex Allen wrench, and a crowbar. Hale tested the key and socket, which enabled him to open the small and large pump doors. He also found a fuel cell in the back of the truck. Hale testified that a fuel cell is an auxiliary fuel box that some trucks have. Although fuel cells are common, their presence can indicate possible skimming activity because people involved in skimming often use stolen credit card numbers to buy fuel and sell it at black market fuel depots.

Detective Hale also obtained a search warrant to download the contents of Appellant's cell phone, and Detective Thedford examined the contents. Thedford found a large amount of evidence that tends to show Appellant was involved in skimming activity. First, she found a conversation between Appellant and an individual she identified as Alvaro Castillo on the text messaging application WhatsApp. In the conversation, Castillo sent Appellant a link to www.bankbinlist.com. Thedford explained that a BIN is the four or five numbers on a credit or debit card that identify the issuing bank and whether it is a credit or debit card. People involved

4

in skimming activity often want to know the issuing bank of stolen credit or debit card information because it helps them avoid sounding an alarm by using a local bank's card information in another state. Castillo also sent Appellant numerous Google maps screenshots and photos of different gas pumps. Additionally, he sent numerous photographs of a fuel meter with readings showing the amount of gas pumped. Thedford explained that this evidence was significant because if a person was reselling fuel, he would keep track of the amounts of fuel sold and required. Second, Appellant's phone contained numerous photographs of gas pumps and fuel meter readings in addition to those sent by Castillo. Finally, Appellant's web searches on the phone included numerous searches for particular gas stations and numerous www.bankbinlist.com searches.

In Appellant's brief, he lists the following items of evidence and the reasons he believes they are speculative:

- Map Apps showing a search for Exxon gas stations in Tyler: speculative because the Exxon where Appellant was stopped was not in Appellant's phone and the listed gas stations in the app had no evidence of skimming activity;

- Searches of gas stations in Louisiana, Missouri, and Houston: speculative because there is no evidence that credit card skimming activity occurred at these locations;

- Photographs and text messages of gas pumps and videos of fuel meter: speculative because the photos and messages were remote in time and not linked to conduct that occurred in Tyler or to known skimming activity at other locations;

- Not having girlfriend's address in phone or knowing street name: speculative that Appellant was being untruthful because Appellant's lack of knowledge of a street name or failure to input address into map application does not mean that he did not know how to get to his girlfriend's location;

- Associating with a dark truck that had $10 transaction at Pump 4: speculative that the vehicle was working with Appellant because that vehicle and its occupants were never located and could not corroborate skimming activity; stop of vehicle matching description in Lindale revealed no criminal activity; and officer testimony could not confirm that Appellant's statement of having $10 cash in his pocket resulting from the transaction was untrue;

- The Blink camera would have alerted to other tampering of Pump 8: speculative because the camera did not activate until after door was opened rather than upon being jarred by Appellant's alleged unfastening of the bolts and because there was no evidence by Hale or Thedford that the gap Ewen[4] found in the door was present on December 6th;

[4] Officer Brennon Ewen was one of the responding patrol officers.

- The existence of a "gas pump key" on Appellant's key ring: speculative because it was a "universal key" that could be purchased off Amazon and there was no evidence that a gas pump key was needed to open the door to Pump 8;

- The text message with www.bankbinlist.com: speculative because the message was sent several months before the offense; and

- Presence of fuel tank in back of Appellant's truck: speculative because there was no evidence that Appellant's statement that he owned a trucking company was untrue.

Under the ***Jackson*** test, we permit juries to draw multiple reasonable inferences if each inference is supported by the evidence. ***Hooper v. State***, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007). However, juries are not permitted to make conclusions based on mere speculation or factually unsupported inferences or presumptions. ***Id.*** An inference is a conclusion reached by considering other facts and deducing a logical consequence from them. ***Id.*** at 16. Speculation is mere theorizing or guessing about the possible meaning of facts and evidence. ***Id.***

We cannot agree with Appellant that the jury's verdict here is based on mere speculation. The jury could reasonably infer that Appellant was involved in skimming activity from the evidence recovered from his phone and truck. The jury could reasonably infer from other evidence that Appellant lied to the police officers about what he was doing at the station and in Tyler, and that this was because he was conscious of his own guilt. Considering this evidence, the jury could reasonably infer that when Appellant opened a gas pump where a skimmer was discovered four days prior, pulled out the CRIND board, and looked around inside the pump, he was trying to locate the skimmer in an effort to intercept electronic communications. Viewing all the evidence in the light most favorable to the jury's verdict, we conclude that the jury was rationally justified in finding, beyond a reasonable doubt, that Appellant committed unlawful interception of electronic communications. *See* TEX. PENAL CODE ANN. § 16.02(b); ***Jackson***, 443 U.S. at 319, 99 S. Ct. at 2789; *see also* ***Brooks***, 323 S.W.3d at 899. Accordingly, we overrule Appellant's sole issue.

## DISPOSITION

Having overruled Appellant's sole issue, we ***affirm*** the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered April 28, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**APRIL 28, 2023**

**NO. 12-22-00047-CR**

**YOELVIS HERRERA,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 114th District Court
of Smith County, Texas (Tr.Ct.No. 114-0156-20)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*